UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
GREGORY WHITE, HENRY MATTOS,                    *
and GREGORY CRANE,                              *
        Plaintiffs                              *
                                                *       C.A. # 05-10716-MLW
                                                *
        vs.                                     *
                                                *
PACIFIC DIRECT CORPORATION and                  *
BHUPINDER SINGH,                                *
        Defendants                              *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

**Memorandum in Support of
Plaintiff Gregory White, Henry Mattos, and Gregory Crane's
Motion to Reopen Their Case, or in the Alternative,
to Enforce the Parties' Settlement Agreement**

### Statement of Facts

Plaintiffs are former employees of the defendant Pacific Direct Corporation. Pacific Direct is in the business of providing transportation and shipping services, primarily in the commercial food industry (for example, they arrange for trucks to ship food to large supermarkets). Plaintiffs are transportation brokers (i.e. they arrange for the trucking or other transport of a company's products to the end-users of the products).

On May 1, 2003, Gregory Crane commenced employment with Pacific Direct. On May 3, 2003, Gregory White commenced employment with Pacific Direct. On June 9, 2003, Henry Mattos commenced employment with Pacific Direct. Crane was to be paid a salary of $110,000/year, White was to earn $126,000/year, and Mattos was to earn $175,000/year.

In fact, until September 17, 2003, plaintiffs were paid their promised salaries. Beginning October 2, 2003, plaintiffs began to receive checks for the same income they had netted after taxes prior to October 2, 2003. Unbeknownst to plaintiffs, defendant was no longer withholding taxes, but instead was now simply paying plaintiffs their net income, rather than their gross salary to which they were entitled. Defendant issued 4 checks to each plaintiff with fraudulent pay stubs indicating it was withholding taxes that in fact it was not withholding.[1] After

---

[1] The scheme worked identically for all three plaintiffs. Using Gregory White as an example, the scheme worked as follows:

> Mr. White's pay stub of September 17, 2003 indicated that he had earned the sum of $39,173.08 in gross wages for the year to date and that Pacific Direct had withheld the following sums for the year to day: $8,462.88 in federal income tax, $2,428.73 in F.I.C.A. taxes and $1,860.77 in state income taxes.
>
> Beginning October 2, 2003, defendants issued four fraudulent pay stubs to Mr. White (10/2/03, 10/17/03, 11/3/03, 11/17/03). Each and every one of these pay stubs noted an increase in federal taxes, social security taxes, state taxes and medicare taxes allegedly withheld from the date of the previous paycheck. In fact, defendants had stopped withholding taxes and stopped making tax payments to the appropriate authorities. The October 2, 2003, pay stub indicated that Mr. White had earned $44,423.08 in gross wages for the year to date and that defendants had withheld $9,623.63 in federal taxes for the year to date, $3,398.36 in F.I.C.A. taxes for the year to date, and $2,122.64 in state taxes for the year to date. The October 17, 2003, pay stub indicated that Mr. White had earned $49,673.08 in gross wages for the year to date and that defendants had withheld $10,784.38 in federal taxes for the year to date, $3,799.99 in F.I.C.A. taxes for the year to date, and $2,384.55 in state taxes for the year to date. The November 3, 2003, pay stub indicated that Mr. White had earned $54,923.08 in gross wages for the year to date and that defendants had withheld $11,945.13 in federal taxes for the year to date, $4,201.61 in F.I.C.A. taxes for the year to date, and $2,646.46 in state taxes for the year to date. The November 17, 2003, pay stub indicated that Mr. White had earned $60,173.08 in gross wages for the year to date and that defendants had withheld $13,105.88 in federal taxes for the year to date, $4,603.24 in F.I.C.A. taxes for the year to date, and $2,908.37 in state taxes for the year to date.
>
> On or about March 15, 2004, Mr. White received a W-2 Form from defendants. It noted his wages for the year as $39,173.08 (i.e. the amount of wages he had earned through September 17, 2003 and less than the amounts noted on the 4 fraudulent pay stubs). Similarly, it noted the amount of taxes withheld as the amount of tax which had been withheld as of September 17, 2003, which also was less than the amounts noted as withheld on the fraudulent pay stubs.

November 17, 2003, Pacific Direct no longer provided the plaintiffs with pay stubs accompanying their paychecks.

As of January 31, 2004, Pacific Direct had failed to issue W-2 forms as required by the law. Upon plaintiffs' insistence that W-2 forms be issued, on March 15, 2004, Pacific Direct issued W-2 forms, revealing for the first time that the prior pay stubs had been fraudulent and that taxes claimed to have been withheld in fact had not been withheld. In response to plaintiffs' complaints, defendant after April 30, 2004, began issuing plaintiffs bi-monthly paychecks for their entire gross salary without any withholding.

Pacific Direct only paid plaintiffs their agreed upon salaries[2] from May 1, 2004 - August 15, 2004. In August 2004, Pacific Direct began a campaign of coercion, seeking to have the plaintiffs sign a commission agreement in lieu of the salary to which they were entitled. Defendant Singh told each of the plaintiffs that Pacific Direct would pay the back wages owed to each plaintiff only on the condition that they sign the commission agreement and abandon their claim to a salary.

As the result of Pacific Direct's coercion, White signed a "commission agreement" on August 29, 2004, Mattos signed a "commission agreement" on September 20, 2004, and Crane signed a "commission agreement" on October 18, 2004. Pacific Direct made all of the "commission agreements" effective August 15, 2004, although no-one had signed the documents as of that date.

---

[2] In fact, defendants were not paying plaintiff Henry Mattos his "agreed upon salary", as defendants had unilaterally lowered Mattos' salary on January 15, 2004, from $175,000/year to $110,000/year.

None of the plaintiffs received payment for their gross wages after August 15, 2004. Although the commission agreements required payment of commissions based on a percentage of "gross net sales" generated by plaintiffs, none of the plaintiffs were ever given an accounting showing gross net sales or access to records from which they could calculate gross net sales.

All three plaintiffs resigned on November 9, 2004. Between August 15, 2004 and November 9, 2004, all three plaintiffs received checks for only a percentage of their agreed upon salaries, ranging from 76% of promised salary for Gregory White to 92% of promised salary for Gregory Crane. It is unclear whether these checks were supposed to be commission payments or payment of the taxes never withheld from September 17 2003 - April 30, 2004. All of the checks issued to Gregory White were in round numbers and could not reflect commissions earned.

## Statement of the Case

The Complaint in this case was filed in state court on or about March 29, 2005. On April 11, 2005, the defendants removed the case to federal court.

The Complaint alleges that Pacific Direct and its President Bhupinder Singh violated M.G.L. c. 149, § 148 ("the Wage Act"), breached plaintiffs' employee contracts and committed fraud.

On April 11, 2006, the parties appeared before Magistrate Judge Robert B. Collings seeking to mediate their dispute. The parties reached a settlement agreement. The fact of settlement and certain of its terms were put on the record by Magistrate Judge Robert B. Collings. Among other orders, Magistrate Judge Collings ordered the parties to execute the agreement in a reasonable amount of time.

Counsel to the parties negotiated the wording of a settlement agreement, to which all parties agreed on April 19, 2006. The Agreement provided that defendant would pay a sum of money to the plaintiffs "within twenty (20) business days of the execution of this Agreement"[3]. *Settlement Agreement, ¶ 1.*

On April 21, 2006, all three plaintiffs signed the Agreement. The Agreement executed by the Plaintiffs was sent to Defendants with a cover letter stating that in plaintiffs' opinion settlement proceeds were due and payable on or before May 19, 2006, i.e. within twenty (20) business days of plaintiffs' executing the Agreement. Defendants' counsel responded that defendants did not agree with the interpretation of when payment was due, but nevertheless did not believe this would be an issue, implying that plaintiffs could expect payment on or before May 19, 2006.

In fact, defendants did not make payment on or before May 19, 2006, although defendant Pacific Direct, Inc. did sign the Agreement on May 15, 2006. As the Agreement was signed by all signatories to the Agreement on May 15, 2006, under anyone's interpretation of the Agreement, payment was clearly due on or before June 12, 2006.

On June 9, 2006, plaintiffs' counsel wrote defendants' counsel reminding him that under anyone's interpretation of the Agreement, payment was due at the end of business on June 12, 2006. On June 13, 2006, defendants' counsel wrote plaintiffs' counsel indicating that while his

---

[3] This is jury-waived case. The case was sent to Magistrate Collings to mediate as he will not be a decision-maker in the case. As the Court hearing this motion will be deciding the action if the case is reopened, plaintiffs are not attaching a copy of the Settlement Agreement to this Motion. If the Court feels its is necessary to review the Settlement Agreement to decide this motion, plaintiffs, at the Court's request, shall provide the court with a copy of the Settlement Agreement.

client had assured him that he would get counsel the settlement check, defendant in fact never did so. As of the date of this Motion, no payment has been made to Plaintiffs.

The Settlement Agreement agreed upon by counsel provided that upon receipt of payment and execution of the Agreement by all parties, the parties would sign and file with the United States District Court a joint stipulation with prejudice and without costs in the Civil Action. *Settlement Agreement,* ¶ 2. As payment was never made, the parties never signed nor filed a stipulation of dismissal.

Nevertheless, the Court (Sorokin, Magistrate Judge), on its own initiative, on April 13, 2006, issued a 45 Day Settlement Order of Dismissal, ordering that the action be dismissed without costs and without prejudice to the right of any party, upon good cause shown, to reopen the action within 45 days if settlement is not consummated. More than 45 days have passed since the issuance of this Order.

### Argument

I.     THE COURT SHOULD EXERCISE ITS DISCRETION TO REOPEN THE ACTION.

FRCP 60(b) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . .

Plaintiffs should be relieved of the final judgment entered by the Court. The Court, by the very terms of its Order, always intended that the judgement be without prejudice and assumed that 45 days would give the parties adequate time to consummate a settlement agreement. Unfortunately, the Settlement Order of Dismissal was entered by a Magistrate, other

than the Magistrate who conducted the mediation, who was unaware that one of the provisions of the Settlement Agreement was that defendant did not need to make payment for twenty (20) business days following execution of the Agreement.  The Magistrate was further unaware of the fact that the Settlement Agreement specifically stated that a Stipulation of Dismissal would not be entered until payment was received by plaintiffs.

Plaintiffs have acted promptly at all times.  They negotiated the terms of the settlement agreement within eight (8) days of the conclusion of the mediation.  They signed the Settlement Agreement two (2) days after the terms of the Agreement were finalized.  Defendants have acted promptly in filing this motion, filing it within eight (8) days of the date payment of the settlement was due.

On the other hand, defendant has first delayed signing the Agreement as long as he felt allowable, and then has failed to make the promised payment, despite assurances from his counsel that this should not be a problem.  Defendants' failure to make payment is in keeping with the underlying allegations of the Complaint, which allege that defendant failed to make promised salary payments and then issued fraudulent documents to cover up his failure to make payments.

Plaintiffs accepted a settlement, representing a discounted amount of money from the amount of their claim, for the sole reason that they were promised an assured payment, which was not forthcoming.  If plaintiffs are going to have to undertake the expense of collecting on a judgment, they should be given the opportunity to try their case and seek to obtain a judgment for the full amount of their claim, rather than be limited to the amount of the settlement agreement, which they accepted solely to avoid the need of collection procedures.

II.  IN THE ALTERNATIVE, IF THIS COURT DOES NOT REOPEN PLAINTIFF'S CLAIM, THE COURT SHOULD ENTER AN ORDER ENFORCING THE SETTLEMENT AGREEMENT.

The First Circuit noted in the case of *Dankese v Defense Logistics Agency*, 693 F.2d 13, 16 (1st Cir. 1982):

> Appellant is not left remediless. The policy of favoring settlement agreements as a means of avoiding costly and time consuming litigation would scarcely be furthered by leaving a party without recourse when the other party fails to perform according to the terms of the agreement. It is well established, therefore, that a trial court retains an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court.

(Citations omitted).

*See, also, Shapiro v. American Home Insurance Co.*, 616 F.Supp. 906, 920 (D. MA 1985) (same); *Palmos Del Sol v. United States Fidelity and Guaranty Co.*, 338 F. Supp. 2d 303, 305 (D.PR 2004) (same).

Plaintiffs ask the Court in its discretion to reopen the case. If, and only if the Court were to deny Plaintiffs motion to reopen the case, plaintiffs ask the Court to issue an order enforcing the settlement agreement, as plaintiffs should not be required to undertake the expense of filing a new action to enforce the settlement agreement which defendant has breached.

III.  THE COURT SHOULD ORDER DEFENDANTS TO PAY PLAINTIFFS' ATTORNEYS FEES RELATED TO THE FILING OF THIS MOTION.

In *Palmos Del Sol v. United States Fidelity and Guaranty Co., supra* at 305-306, the Court, pursuant to its inherent powers, enforced the terms of the parties' settlement agreement and further ordered that "inasmuch as USF & G failed to comply with the terms of the settlement agreement by delaying payment to PALMAS without justification, thereby prejudicing plaintiff, we FIND that the imposition of sanctions and attorneys' fees is appropriate" against the

defendant. For the same reasons, sanctions and attorneys' fees should be imposed against the defendant Pacific Direct, Inc. in this case.

GREGORY WHITE, GREGORY CRANE &
HENRY MATTOS
By Their Attorney

_____
Stephen Schultz, Esq.
Engel & Schultz, LLP
125 High Street, Suite 2601
Boston, MA 02110
(617) 951-9980

June 20, 2006

Certificate of Service

I, Stephen Schultz, hereby certify that I served a copy of the above-entitled document on counsel of record for the defendants by hand on this 20th day of June, 2006.

_____
Stephen Schultz